IN THE SUPREME COURT OF TENNESSEE

FILED

December 29, 1997

Cecil W. Crowson
Appellate Court Clerk

AT NASHVILLE

|                        |   |                             |
|------------------------|---|-----------------------------|
| STATE OF TENNESSEE     | ) | FOR PUBLICATION             |
|                        | ) |                             |
|                        | ) | FILED:  DECEMBER 29, 1997   |
| Appellant              | ) |                             |
|                        | ) | PICKETT COUNTY              |
| v.                     | ) |                             |
|                        | ) | HON. LEON BURNS, JR.,       |
| BILLY O. WINNINGHAM    | ) |     JUDGE                   |
|                        | ) |                             |
|                        | ) | NO. 01-S-01-9701-CC-00008   |
| Appellee               | ) |                             |

For Appellee:                          For Appellant:

PHILLIPS M. SMALLING              JOHN KNOX WALKUP
Byrdstown, TN                     Attorney General and Reporter

                                  MICHAEL E. MOORE
                                  Solicitor General

                                  DARYL J. BRAND
                                  Assistant Attorney General
                                  Nashville, TN

                                  WILLIAM E. GIBSON
                                  District Attorney General

                                  ANTHONY W. HUDDLESTON
                                  Assistant District Attorney
                                    General
                                  Livingston, TN

OPINION

JUDGMENT REVERSED; INDICTMENT REINSTATED                    BIRCH, J.

Billy O. Winningham, the appellee, was adjudicated in contempt of court for having violated an order of protection issued at the request of his estranged wife. The contemptuous conduct alleged included setting the fire that burned down his wife's house.[1] This same conduct also served as the basis for an arson indictment later returned against him.

The trial court, upon the appellee's motion, dismissed the indictment on double jeopardy grounds; the Court of Criminal Appeals affirmed that judgment. We granted the State's application for review under Rule 11, Tenn. R. App. P., in order to determine whether the double jeopardy provisions of the United States and Tennessee Constitutions bar a subsequent criminal prosecution when the conduct underlying the charge in the indictment also served as the evidentiary basis for an earlier contempt conviction. Because arson and contempt are, in the context presented, significantly different offenses under double jeopardy analyses, we find no double jeopardy violation here and reverse the judgment of the Court of Criminal Appeals.

I

The protective order in question was entered on October 15, 1993, by the Circuit Court of Pickett County in the matter of Mary S. Winningham v. Billy O. Winningham. It provided:

---

[1]Other conduct supporting the contempt conviction included: threats to Ms. Winningham's life, trespass upon her property, and shots fired at her car.

> the respondent is enjoined from coming about petitioner [Ms. Winningham] for any purpose and specifically from abusing, threatening to abuse petitioner, or committing any acts of violence upon petitioner upon penalty of contempt.

On November 19, 1993, Ms. Winningham's house burned, and the appellee was arrested and incarcerated the same day on a contempt charge for violation of the protective order. On November 23, 1993, the trial court held a hearing on the contempt charge and found the appellee guilty of civil and criminal contempt. The trial court delineated the factual basis for its ruling:

> The proof in this case satisfies the Court both by a preponderance of the evidence for civil contempt and beyond a reasonable doubt for criminal contempt that the defendant did in fact violate this order. I'm satisfied that the proof, by both direct and circumstantial evidence, indicates that the defendant threatened Ms. Winningham's life on the telephone, that he came around there, that he came back onto the back porch and cut the wires. I'm satisfied that by direct and circumstantial evidence that he came back to the property and set the fire that led to this house being burned down.
>
> The Court finds in this case that the aggrieved party has suffered damages in the burning of her home and in the shooting of her car, both of which in the Court's opinion, and the Court finds both by a preponderance of the evidence and beyond a reasonable doubt, was at the hand of the defendant.

The trial court imposed punishment for both civil contempt and criminal contempt, pursuant to Tenn. Code Ann. §§ 36-

3

3-610 (1991) and 29-9-105 (1980).[2] The order of civil contempt was vacated on January 24, 1994. As of that date, the appellee had been incarcerated longer than the maximum sentence allowable for criminal contempt under Tenn. Code Ann. § 29-9-103 (Supp. 1993).[3]

On January 3, 1994, the appellee was indicted for arson in the alleged burning of Ms. Winningham's house. The Criminal Court of Pickett County found that the trial court's prior contempt judgment was based on the same facts upon which the arson indictment had been grounded. Consequently, the court dismissed the arson indictment on double jeopardy grounds, and the Court of Criminal Appeals affirmed the dismissal.

II

Because this appeal presents a question of law, our review is de novo with no presumption of correctness. State v. Davis, 940 S.W.2d 558, 561 (Tenn. 1997. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution,

---

[2]Tennessee Code Annotated § 36-3-610 (1991) provides: "Upon violation of the order of protection . . . the court may hold the defendant in civil or criminal contempt and punish him in accordance with the law." Tennessee Code Annotated § 29-9-105 (1980) provides: "If the contempt consists in the performance of a forbidden act, the person may be imprisoned until the act is rectified by placing matters and person in statu quo [sic], or by the payment of damages."

[3]Tennessee Code Annotated § 29-9-103 (Supp. 1993) provides:

(a) The punishment for contempt may be by fine or by imprisonment, or both.
(b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days . . . .

4

applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." Article 1, § 10 of the Tennessee Constitution provides that "no person shall, for the same offence, be twice put in jeopardy of life or limb." As we have stated many times, three fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (citing, among others, North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed.2d 656, 664-65 (1969)).

Under the Tennessee Constitution, this Court inquires further than do federal courts in determining whether a defendant has been unconstitutionally subjected to double prosecution for the same conduct. According to Denton, 938 S.W.2d at 381, resolution of a double jeopardy issue requires the following:

> (1) a Blockburger analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac, of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other.

A

Thus, we begin with the first <u>Denton</u> factor, an analysis under the test established in <u>Blockburger v. United States</u>, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306, 309 (1932).[4]  In the context of both double punishment and double prosecution cases, the subject offenses must survive the <u>Blockburger</u> "same-elements" test in order to satisfy the requirements of the Double Jeopardy Clause.  <u>United States v. Dixon</u>, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed.2d 556, 568 (1993).  This test asks "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution."  <u>Id.</u>[5]

---

[4]Our <u>Blockburger</u> analysis is guided by <u>United States v. Dixon</u>, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed.2d 556 (1993).  In <u>Dixon</u>, the United States Supreme Court held that double jeopardy protection attaches to nonsummary criminal contempt proceedings in the same way it attaches to other criminal prosecutions. Nonsummary contempt proceedings address contemptuous conduct occurring outside of the court's presence.  As such, the contempt hearing is usually conducted before a different judge at a date subsequent to the conduct.  In contrast, summary contempt refers to misbehavior occurring in the presence of the court, which the court addresses immediately.  This court has previously held that imposing two punishments for the same offense through <u>summary</u> contempt and a criminal prosecution does not violate double jeopardy principles.  <u>Maples v. State</u>, 565 S.W.2d 202, 203 (Tenn. 1978).  The instant case involves nonsummary contempt proceedings.

[5]Prior to <u>Dixon</u>, the United States Supreme Court also included the "same-conduct" test in the double jeopardy analysis:  if, to establish an essential element of an offense, the government will prove conduct that constitutes another offense for which the defendant has already been prosecuted, the second prosecution violates double jeopardy.  <u>Grady v. Cortin</u>, 495 U.S. 508, 510, 109 L. Ed.2d 548, 557, 110 S. Ct. 2084, 2087 (1990).  The <u>Dixon</u> majority, however, explicitly overruled <u>Grady</u>, leaving <u>Blockburger</u> as the sole measure of federal double jeopardy violations.  <u>Dixon</u>, 509 U.S. at 704, 113 S. Ct. at 2806, 125 L. Ed.2d at 573.  Thus, courts are no longer required to determine whether both prosecutions were based on the same underlying conduct.

6

Dixon included appeals by Alvin Dixon and Michael Foster; their cases were consolidated on appeal. Dixon was released under an order which specified that the commission of "any criminal offense" could subject him to prosecution for contempt of court. While on bond under the release order, he was indicted for a felony drug offense. This indictment triggered Dixon's conviction for criminal contempt of court for violation of the release order.

The other defendant, Foster, consented to a protection order obtained by his estranged wife. This order required that he not "molest, assault, or in any manner threaten or physically abuse" his wife. Alleging several episodes of assaults and threats, his wife filed three motions to have Foster held in contempt. The court held a hearing and found him guilty of criminal contempt for violation of the order. Subsequently, he was indicted on three counts of threatening to injure, one count of simple assault, and one count of assault with intent to kill. All five counts were based on episodes for which he was either acquitted or convicted in the previous contempt hearing.

On appeal, each defendant contended that prosecution under his respective indictment constituted a second prosecution for the same offense--the first having been the contempt conviction. This procedure, they asserted, violated double jeopardy principles. Id. at 691-93, 2853-55, 564-66.

A majority of the Dixon Court disagreed about the application of the Blockburger test to the facts described above.

7

As a result, not one of the five separate approaches in <u>Dixon</u> gained support sufficient to constitute a majority view.[6]

Nevertheless, in the matter under review, the Court of Criminal Appeals adopted Justice Scalia's approach to the <u>Blockburger</u> test and concluded that the arson indictment violated double jeopardy principles. Under Scalia's approach, the language of a court order may, but does not always, "incorporate" statutory offenses into the order. If an offense is deemed to have been "incorporated," then application of double jeopardy principles would permit but one prosecution, which could be for either the contempt of court or the incorporated offense--whichever one was first prosecuted.

The rationale is that when the underlying offense is incorporated into the order, it becomes an element of contempt. As an element of contempt, the underlying offense involved must be included in the <u>Blockburger</u> analysis. In effect, the underlying offense becomes a lesser-included offense of contempt. Consequently, the underlying offense does not have an element not

---

[6]Justice Scalia, joined by Justice Kennedy, proffered the first approach, a <u>Blockburger</u> analysis modified to fit the context of a contempt proceeding followed by a prosecution for the underlying substantive offense. Chief Justice Rehnquist, joined by Justice O'Connor and Justice Thomas, proffered the second approach, a traditional <u>Blockburger</u> analysis. The third opinion, written by Justice White, and the fifth opinion, written by Justice Souter, are arguably the least viable approaches in light of the majority decision to overrule <u>Grady</u>. Both utilized a <u>Grady</u>-type analysis of the conduct at issue, rather than focusing on the statutory elements of each offense, and concluded that all the subsequent prosecutions violated double jeopardy. Writing the fourth opinion separately, Justice Blackmun found no double jeopardy violations without actually applying <u>Blockburger</u>.

contained in the contempt offense, and subsequent prosection for the underlying offense violates double jeopardy principles under Blockburger. Id. at 697-98, 2856-57, 569-70.

As a result of the "incorporation" approach, the outcome of a case would necessarily depend on the language of the order at issue, and the consequence of such dependence is not easily predictable. According to Justice Scalia, the language of the protective order prohibiting Foster from assaulting or threatening his wife did not incorporate all criminal statutes concerning assaults and threats. Id. at 700-02, 2858-59, 570-72. In contrast, the language of the order prohibiting Dixon from committing criminal offenses did incorporate all criminal statutes. Id. at 698, 2857, 569. The result of this approach is not one that is readily predictable or consistent.

The protective order issued against Winningham enjoined him from "committing any acts of violence upon petitioner." This language varies slightly from the language of the orders issued against Foster and Dixon. Consequently, application of the "incorporation" approach to the protection order in the instant case is unworkable. The problem with the "incorporation" approach is that no matter how carefully protective orders may be crafted, they may nevertheless incorporate the elements of a criminal offense and thereby unwittingly bar subsequent prosecution for the underlying offense--a result certainly not intended.

We find that Chief Justice Rehnquist's application of Blockburger is better-reasoned and more easily adaptable to Tennessee case law. Under this approach, protection orders[7] do not implicitly incorporate the statutory elements of any crime into the offense of contempt. The Blockburger test focuses not on the terms of the particular order involved, but on the statutory elements of contempt in the ordinary sense. Further, the underlying criminal offense is not viewed as a lesser-included offense because it is not necessarily included within the statutory elements of contempt. Id. at 716-20, 2867-68, 579-82 (Rehnquist, C.J., concurring and dissenting).

Current Tennessee case law parallels Rehnquist's approach to the double jeopardy issue created by criminal prosecution following contempt proceedings. See State v. Wyche, 914 S.W.2d 558, 560-61 (Tenn. Crim. App. 1995); State v. Sammons, 656 S.W.2d 862, 866-69 (Tenn. Crim. App. 1982). In Sammons, the defendant violated an order awarding custody of his daughter to his former wife. The violations included his having abducted the daughter several times; he was cited for contempt of court for this conduct. Subsequently, he was indicted on charges of kidnaping and burglary based on the same conduct which resulted in his contempt conviction. Id. at 864-66.

Because of a procedural irregularity, the court was unable to determine whether a double jeopardy violation had

---

[7]Defendant Dixon was actually subject to a release order. Dixon, 509 U.S. at 698, 113 S. Ct. at 2857,125 L.Ed.2d at 565.

occurred in that case.  Id. at 866.  Nevertheless, the court proceeded to find that under Blockburger there would have been no double jeopardy bar to the subsequent prosecutions.  Id. at 868. The court based its finding on the principle that contempt and kidnaping statutes serve entirely different purposes:

> The purposes of the general statutes authorizing a court to punish for abuse of its processes and those creating and prescribing punishment for various indictable offenses are so entirely different, and designed to accomplish such wholly different purposes, that we do not find any violation of constitutional principles in imposing punishment upon an offender under both sets of statutes.

Id. at 867 (quoting Maples v. State, 565 S.W.2d 202 (Tenn. 1978).


This reasoning represents the prevailing view, as the Sammons court explained:

> The traditional view has long been that "former jeopardy cannot be invoked on the ground the same act is punishable both as a contempt of court and as a crime."  The reason underlying the rule is a recognition that the two offenses are not the same for constitutional purposes. Thus, the courts have concluded, "the fact that an act constituting a contempt is also criminal and punishable by indictment or other method of criminal prosecution does not deprive the outraged court from punishing the contempt."

Id. at 868 (citations omitted).  Furthermore, whether the same conduct can be subject to multiple punishment is a matter of legislative intent, and the legislature clearly intended that the

11

kidnaping statute and the contempt statute address totally separate and independent concerns.  Id. at 869.

Applying Justice Rehnquist's approach to the instant case, we find that the arson indictment does not violate federal double jeopardy principles.  Tennessee Code Annotated § 29-9-102(3) (1980) provides the elements of contempt:  (1) willful disobedience or resistance and (2) to any lawful writ, process, order, rule, decree, or command of said courts.  The statutory elements of arson, however, are (1) the knowing damage of any structure by means of a fire or explosion, and (2) without the consent of all persons who have a possessory, proprietary, or security interest therein, or (3) with intent to damage the structure to collect insurance or for any unlawful purpose.  Tenn. Code Ann. § 39-14-301(a) (1991).  Clearly, both statutes contain elements which the other does not; in fact, they have no common elements.  Thus, application of the Blockburger test strongly suggests that the legislature intended to impose separate punishment for each of these offenses.  With this conclusion, the analysis under the Double Jeopardy Clause of the United States Constitution is now complete, and the arson indictment withstands federal constitutional scrutiny.

B

Continuing the inquiry under the Double Jeopardy Clause of the Tennessee Constitution, the next step is the Duchac analysis of the evidence used to prove each offense.  If the same evidence

12

is not required to prove each offense, "then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes." Denton, 938 S.W.2d at 380 (quoting Duchac v. State, 505 S.W.2d 237, 239 (Tenn. 1973)). The particular facts underlying each case must be examined to determine whether one conviction will bar the other. Id. (quoting Duchac, 505 S.W.2d at 240). In Denton, because defendant Denton's conduct consisted of a single attack on a single victim, this Court found that the charges of aggravated assault and attempted voluntary manslaughter necessarily relied on the same evidence. Thus, application of Duchac indicated that the two offenses were the same for double jeopardy purposes. Id. at 382.

In the cause before us, evidence of the following conduct formed the grounds for contempt: threats to Ms. Winningham's life, trespass upon her property, shots fired at her car, and the setting of the fire that destroyed her house. The house-burning incident served also as the grounds for the arson indictment. Thus, in order to prove arson, the State must rely on evidence which necessarily includes some of the same evidence used to establish the appellee's conduct as contemptuous.

We are mindful that evidence in addition to the arsonous conduct supported the contempt conviction. However, the various acts upon which the contempt conviction was based are, for purposes of a Duchac analysis, inseparable. We cannot ascertain whether any one of the factual findings, including the finding that the appellee burned his wife's house, was truly necessary to establish

13

contempt, and we decline to speculate.  In sum, the application of Duchac principles suggests that the two offenses in the case under review are the same for double jeopardy purposes.

C


We now turn to Denton's third double jeopardy factor, the consideration of whether there were different victims or discrete acts.  The charges of contempt and arson both involve the same act of burning a house.  However, the contempt conviction was also based on other discrete acts, such as threats and trespass. Second, different victims are involved.  In general terms, criminal conduct offends the State as the sovereign.  Also offended by arson would be the owner of the structure and, perhaps, the community-at-large.  In contrast, "'[t]he proceeding in contempt is for an offense against the court as an organ of public justice, and not for violation of the criminal law.'"  Sammons, 656 S.W.2d at 868 (quoting State v. Howell, 69 A. 1057, 1058 (Conn. 1908)) (emphasis added).  Thus, the court and the judicial process are "victims" of the act of contempt.  The fact that different victims are involved suggests that separate prosecutions would not violate double jeopardy principles under the Tennessee Constitution.

D


The fourth and final step under Denton requires an analysis of the purposes sought to be accomplished by the enactment of each of the two statutes.  Here, the arson statute and the

14

contempt statute serve vastly dissimilar purposes.  Obviously, the prohibition against arson is intended to deter the destruction of property and the endangerment of human life.  In marked contrast, the offense of contempt of court has as its purposes the maintenance of the integrity of court orders and the vindication of the court's authority.  Dixon, 509 U.S. at 742, 113 S. Ct. at 2880, 125 L. Ed.2d at 597-98 (Blackmun, J., concurring and dissenting); Sammons, 656 S.W.2d at 869.  So essential is this purpose to the proper functioning of the court that even erroneous orders must be obeyed.  Id.  The fact that the two statutes serve vastly different purposes suggests that separate prosecutions would not violate double jeopardy principles under our state constitution.

III

To summarize, through our analyses under Denton we have found both similarities and significant differences between the crime of contempt and arson, as presented in the context of this case.  In the final analysis, we conclude that the Denton factors weigh in favor of allowing the prosecution for arson to follow the appellee's contempt conviction.  Concededly, because the contempt conviction and arson indictment both involve the same act of burning Ms. Winningham's house, some of the same evidence used to prove contempt may also be used to prove arson.  This merely underscores the similarity of the two offenses under Duchac.  However, the vast differences in the elements of each statute, the victims of each statute, and the purposes of each statute demonstrate the legislature's intent to allow separate punishment

15

for both arson and contempt.  Therefore, we hold that the prosecution for arson, in the context of the facts and circumstances here presented, does not violate the Double Jeopardy Clause of the Tennessee Constitution.

In conclusion, neither the Double Jeopardy Clause of the United States Constitution nor that of the Tennessee Constitution bars separate proceedings and punishments for contempt and the substantive offense underlying the contempt.  The judgment of the Court of Criminal Appeals is reversed, and the indictment for arson is reinstated.  Costs of this cause are taxed against the appellee, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:
Anderson, C.J.
Drowota, Reid, Holder, JJ.

16