# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 16, 2011 Session

## STATE OF TENNESSEE v. LARRY WAYNE WEBB

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-A-938     J. Randall Wyatt, Jr., Judge**

---

**No. M2010-02547-CCA-R3-CD - Filed March 7, 2012**

---

A Davidson County jury found the Defendant, Larry Wayne Webb, guilty of forgery in an amount over one thousand dollars and identity theft, and the trial court sentenced him to an effective sentence of twelve years in the Tennessee Department of Correction. On appeal, the Defendant contends that: (1) the evidence is insufficient to support his convictions; (2) the trial court improperly admitted a vehicle certificate of title into evidence at trial; and (3) his convictions for forgery and identity theft should merge. After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and DONALD P. HARRIS, SR. J., joined.

James O. Martin, III, Nashville, Tennessee, for the appellant, Larry Wayne Webb.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Stacy L. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant signing the victim's signature on their jointly owned Corvette's title and selling the car without sharing the proceeds of the sale with the victim. Based on this conduct, a Davidson County grand jury indicted the Defendant for forgery in an amount over $1000 and identity theft. At the trial on the Defendant's charges, the parties presented the following evidence: Penny Holt, the victim, testified that the

Defendant had been her fiancé. The victim testified that, during their relationship, she and the Defendant jointly owned a house and a 1977 Stingray Corvette, and they shared in the expenses for the Corvette. Holt stated that she paid for the car insurance on the Corvette. The victim said that she drove the Corvette "[a]l the time." The victim identified the original Tennessee certificate of title for the Corvette and her name on the title. The victim testified that, since receiving the original Tennessee certificate of title, she had kept the title in a safe deposit box.

In June or July 2008, the victim and the Defendant broke off their engagement. Later that year, in early December, the victim had work done to her Chevrolet Lumina automobile. While her Lumina was in the repair shop, the victim went to retrieve the Corvette to drive and found it missing. The Defendant told the victim that he was having the brakes on the Corvette repaired in Goodlettsville. The victim testified that, because she and the Defendant were on "good terms" despite the break-up, she had no reason to doubt his explanation as to the location of the Corvette.

The victim identified a copy of the Tennessee certificate of title for the Corvette, which displayed her signature as "Penny Holt" transferring the title. The victim denied that the signature was hers and explained that, because there is another person named Penny Holt in Nashville, whenever the victim signs a document she signs her name "Penny H. Holt." The victim identified the signature as the Defendant's handwriting. The victim testified that she never gave anyone permission to sign the certificate of title on her behalf and that the Defendant never requested her permission to sell the Corvette. The victim said that she did not receive any money from the proceeds of this sale of the Corvette.

On cross-examination, the victim testified that she was not present when the Defendant purchased the Corvette, and that she did not contribute any money toward the purchase of the Corvette. Originally, the Corvette certificate of title was registered in Georgia. When the Defendant applied for a Tennessee certificate of title for the Corvette, he added the victim's name to the certificate of title. The victim identified her signature on the back of the Georgia certificate of title for the Corvette and the Defendant's handwriting where he wrote her name as one of the owners.

The victim agreed that she signed an affidavit when they registered the Corvette in Tennessee verifying that she and the Defendant were married. The victim explained that, even though they were not actually married yet, they were engaged, living together, and planned to be married soon, so she signed the affidavit in order to obtain the vehicle license tag for the Corvette.

The victim testified that, when she learned the Defendant had "given a car to the

attorney," she sought an arrest warrant for the Defendant based upon forgery. The victim agreed that she had not seen the copy of the Tennessee certificate of title the Defendant used to transfer the vehicle at that time, but she knew that she possessed the original title and had not signed any document to transfer or sell the Corvette. The victim agreed that the Defendant asked her for the Tennessee certificate of title " a couple of times" but that she never gave it to him. The victim agreed that, after she had sought a criminal warrant, the Corvette was sold, and the victim received "some" of the proceeds from that second sale.

The victim identified documents containing the Defendant's handwriting and signature and documents containing the victim's handwriting and signature.

Jeremy Gourley testified that he was an attorney and that the Defendant was a former client. Gourley said that the retainer fee for him to represent the Defendant was $4000, and the Defendant paid this sum by transferring title of a 1977 Corvette to Gourley. Gourley recalled that the certificate of title the Defendant gave him had two signatures transferring the title. Gourley identified the copy of the certificate of title and said that the signatures were on the Tennessee certificate of title when he received it, so he did not witness anyone signing the certificate of title. Gourley explained the fee arrangement as follows:

> We had a retainer agreement where [the Defendant] was to pay me cash money. Instead of paying me cash money, he brought the car for me to hold for a period of days until he could come up with cash money and after a period of days the cash money did not appear. It wasn't paid on cash money. I was just given the car and the car title.

Gourley testified that the Defendant gave him the Tennessee certificate of title early in December 2008. Gourley said that, pursuant to an agreement with the victim, he sold the Corvette in July 2009 for $5500. Gourley split the proceeds of the sale, after any expenses he incurred, with the victim.

On cross-examination, Gourley agreed that, at the point he received the Corvette, he anticipated he would be paid in cash and that he would not keep the Corvette.

Ann Watkins, a Department of Revenue Supervisor, testified that the Department of Revenue is responsible for all duties related to vehicle title and registration. Watkins said that on December 5, 2008, the Defendant requested a duplicate certificate of title for the Corvette and provided "the original was lost" as the reason for his request. Watkins explained that when a duplicate certificate of title is issued, the word "duplicate" is printed on the certificate of title and the date of issuance reflects the date the duplicate was issued. Watkins identified the duplicate certificate of title issued to the Defendant on December 5,

2008.

Based upon this evidence, the jury convicted the Defendant of forgery in an amount over $1000 and identity theft. The trial court sentenced him as a career offender to concurrent terms of twelve years for each conviction, for a total effective sentence of twelve years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to support his convictions; (2) the trial court erred in allowing the certificate of title for the Corvette to be admitted into evidence; and (3) his convictions for forgery and identity theft should merge.

## A. Sufficiency of the Evidence

The Defendant argues that the evidence is insufficient as to both of his convictions because the victim had no legal interest in the Corvette. The State responds that sufficient proof was presented that the Defendant intended to harm or defraud the victim by forging her signature on the duplicate title, and that he knowingly used the victim's personal identifying information without her consent. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *See also Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)).

The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

### 1. Forgery over $1000

Tennessee Code Annotated section 39-14-114(a) provides that "[a] person commits an offense who forges a writing with intent to defraud or harm another." Section 39-14-114(b) further provides:

> (b) As used in this part, unless the context otherwise requires: (1) "Forge" means to:
>   (A) Alter, make, complete, execute or authenticate any writing so that it purports to:
>     (I) Be the act of another who did not authorize the act;

T.C.A. § 39-14-114(b)(2010).

In this case, the count of the indictment charging forgery alleged that the Defendant altered the certificate of title to reflect that the victim authorized the transfer of the Corvette. The evidence showed that the Defendant presented Gourley with the certificate of title for the Corvette with the victim's signature. The victim denied that the signature on the certificate of title was hers, and the jury compared documents containing her signature with her alleged signature on the certificate of title. The victim identified the handwriting purporting to be her signature as the Defendant's handwriting. The evidence further showed that the Defendant negotiated a fee agreement with Gourley to transfer ownership of the

Corvette to Gourley if the Defendant did not provide the retainer amount in cash. The Defendant did not provide cash payment to Gourley, thereby transferring ownership of the Corvette to Gourley in payment for legal services. The Corvette was later sold for $5500. By presenting the altered certificate of title, the Defendant paid his legal fees and defrauded the victim of her ownership interest in the Corvette. Accordingly, we conclude that the evidence is sufficient to support the Defendant's conviction for forgery over $1000.

## 2. Identity Theft

The identity theft statute provides:
A person commits the offense of identity theft who knowingly obtains, possesses, buys or uses, the personal identifying information of another:

(1) With the intent to commit any unlawful act including, but not limited to, obtaining or attempting to obtain credit, goods, services or medical information in the name of such other person; and

(2) (A) Without the consent of such other person; or

(B) Without the lawful authority to obtain, possess, buy or use that identifying information.

T.C.A. § 39-14-150(b)(2010).

The evidence showed that the Defendant asked the victim more than once for the original certificate of title for the Corvette, and she refused. Without the victim's knowledge, the Defendant falsely claimed that the original certificate of title was lost to obtain a duplicate copy of the certificate of title. The Defendant signed the victim's name on the certificate of title, and the victim denied that the signature on the duplicate certificate of title was hers. The jury compared documents containing the victim's signature with her alleged signature on the duplicate certificate of title. The victim identified the handwriting for the signature bearing her name on the duplicate certificate of title as the Defendant's handwriting. The evidence further showed that the Defendant negotiated a fee agreement with Gourley which would transfer ownership of the Corvette to Gourley if the Defendant did not provide the retainer amount in cash. The Defendant did not provide cash payment to Gourley, thereby, transferring ownership of the Corvette to Gourley in payment for legal services. By presenting the altered certificate of title, the Defendant used the victim's signature without her consent to obtain legal services paid for with the Corvette. Accordingly, we conclude that the evidence is sufficient to support the Defendant's conviction for identity theft. The Defendant is not entitled to relief as to this issue.

The Defendant specifically argues that because the victim lied about the couple's marital status on the affidavit used to obtain the Tennessee title, she has no legal interest in the Corvette. The Defendant then argues that, because the victim has no legal interest in the Corvette, the Defendant cannot be guilty of forgery over $1000 or identity theft. We find this argument unconvincing. The Defendant wrote his name and the victim's name as the owners of the Corvette on the Georgia certificate of title and the victim signed the bottom of the document. The proof supports that the Defendant intended to share ownership of the Corvette with the victim. The effect of her misrepresentation of the couple's marital status to a state employee in order to get the vehicle tags does not change that fact. The Defendant lied to obtain a duplicate copy of the certificate of title, forged the victim's signature in order to convey the Corvette to a third party in payment for services, without the victim's knowledge or consent. Furthermore, as the trial court correctly noted, lawful ownership "is not an essential element in either the offense of forgery or identity theft." The Defendant is not entitled to relief as to this issue.

## B. Admission of the Tennessee Certificate of Title

The Defendant next argues that the trial court erred when it admitted the Tennessee certificate of title reflecting the victim as one of the owners of the Corvette. The Defendant contends that, once the victim admitted that she submitted a false affidavit in order to obtain the Corvette's Tennessee title, the trial court should have removed the title from evidence and instructed the jury to disregard it. The Defendant concedes that an objection was not made at trial, so he requests this Court conduct a plain error review of this issue. The State responds that the Defendant has waived our review of this issue but that, regardless, the certificate of title was relevant evidence that the jury was properly permitted to consider.

The State is correct that, by failing to contemporaneously object, the Defendant has waived review of this issue. Tenn. R. App. P. 36(a) (stating appellate relief is generally not available when a party is "responsible for an error" or has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error"); *see State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App.1988) (waiver applies when the defendant fails to make a contemporaneous objection).

We may, however, as the Defendant herein requests, consider errors affecting the substantial rights of the Defendant if review is necessary to do substantial justice. Because, according to Tennessee Rule of Appellate Procedure 13(b), "[r]eview generally will extend only to those issues presented for review," we must review the issue presented by the Defendant herein pursuant to Tennessee Rule of Appellate Procedure 36(b), which states that

"[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." A court will grant relief for plain error pursuant to Rule 36(b) only when: "(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake." *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (citing *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)). If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id*. The party claiming plain error has the burden of persuading the appellate court. *State v. Banks*, 271 S.W.3d 90, 119 (Tenn. 2008).

Both parties agree that the record clearly establishes what occurred at the trial court so the first criteria required is met. Next, the Defendant contends that the admission of the Tennessee certificate of title, bearing the victim and the Defendant's names as owners, breached a clear and unequivocal rule of law. He relies upon Tennessee Rule of Evidence 403 and Rule 901 for his argument.

Rule 403 of the Tennessee Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The Defendant argues that after the victim's "fraud" came to light, the Tennessee certificate of title "was of no probative value whatsoever." We do not agree. The Tennessee certificate of title identifying the Defendant and the victim as co-owners of the Corvette is relevant to this case. Our inquiry, however, is not whether it is relevant but whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The victim claimed an ownership interest in the car. The original Tennessee certificate of title, without the forged signature, and the "duplicate" Tennessee certificate of title with the forged signature go directly to the claim that the Defendant forged the victim's signature on the document.

We would also note that, even had the trial court excluded the Tennessee certificates of title, the Georgia certificate of title bore, in the Defendant's handwriting, the Defendant's name and the victim's name as the owners of the Corvette. The Georgia title was admitted into evidence prior to the admission of the Tennessee title.

Rule 901 of the Tennessee Rules of Evidence provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier fo fact that the matter in question is what its proponent claims.

The victim identified the original Tennessee certificate of title as the document she kept in her safe deposit box since her receipt of the document. She further identified her signature on the document. As to the duplicate Tennessee certificate of title, Watkins, as a keeper of the records for the Tennessee Department of Revenue, identified the duplicate Tennessee certificate of title issued to the Defendant. Thus, both the original and duplicate Tennessee certificates of title were properly authenticated prior to admission at trial.

The Defendant appears to argue that because the victim misrepresented the couple's marital status, the certificate of title was not properly authenticated. These are two separate issues. The document, as we have above discussed, was properly authenticated by both the victim and Watkins. The victim identified the original Tennessee certificate of title as the document she received and kept in a safe deposit box since the time of receipt. Her identification of a document she received and kept in a safe deposit box is sufficient to support a finding that the original certificate of title is the certificate of title she received when she and the Defendant registered the Corvette in the State of Tennessee. The victim's misrepresentation on an affidavit in order to get the vehicle license tags goes to the victim's credibility as a witness and not identification of the document. The victim's misrepresentation to a government employee was brought out on cross-examination for jury consideration of the victim's credibility.

Because there is not a breach of a clear and unequivocal rule of law, the Defendant has failed to show that the trial court committed plain error when it allowed the admission of the Tennessee certificates of title. The Defendant is not entitled to relief as to this issue.

### C. Double Jeopardy

The Defendant's final argument is that because his convictions for forgery and identity theft are based on the same course of conduct in violation of double jeopardy protections, his convictions should be merged. The State responds that the trial court correctly declined to merge the Defendant's convictions for forgery and identity theft because the evidence at trial weighed in favor of dual convictions. We agree with the State.

Because the question of whether the Defendant's prosecution in this case violated

principles of double jeopardy is a question of law, our review is de novo with no presumption of correctness afforded to the ruling of the trial court. *See State v. Winningham*, 958 S.W.2d 740, 742-43 (Tenn. 1997) (citing *State v. Davis*, 940 S.W.2d 558, 561 (Tenn. 1997)).

Both the federal and state constitutions protect an accused from being "twice put in jeopardy of life or limb" for "the same offence." U.S. Const. Amend. V; Tenn. Const. art. 1, sec. 10. The United States Supreme Court has observed of the double jeopardy clause:

> Our cases have recognized that the Clause embodies two vitally important interests. The first is the 'deeply ingrained' principle that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' The second interest is the preservation of 'the finality of judgments.'

*Yeager v. United States*, 557 U.S. 110, 129 S.Ct. 2360, 2365-66 (2009) (citations omitted). To these ends, our state Supreme Court has "noted many times, three fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996) (citing *Whalen v. United States*, 445 U.S. 684, 688 (1980); *United States v. Wilson*, 420 U.S. 332, 343 (1975); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). In this case, the Defendant contends that his punishments constitute "multiple punishments for the same offense." "The key issue in multiple punishments cases is legislative intent." *Denton*, 938 S.W.2d at 379. "[W]hether the offenses are the 'same' for double jeopardy purposes depends upon a 'close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances." *Denton*, 938 S.W.2d at 379 (quoting *State v. Black*, 524 S.W.2d 913, 919 (Tenn. 1975)).

Our Supreme Court has crafted the "analytical framework" for a considering a plea of double jeopardy:

> The courts must consider 1) the statutory elements of the offenses, guided by the principles in *Blockburger v. United States*, 284 U.S. 299 (1932); 2) the evidence used to establish the offenses, guided by the principles in *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973); 3) whether the defendant's conduct involved multiple victims or discrete acts; and 4) whether the purpose of the respective statutes at issue is the same or different.

*Cable v. Clemmons*, 36 S.W.3d 39, 42 (Tenn. 2001) (citing *Denton*, 938 S.W.2d at 381). "No single aspect of this analysis is given controlling weight; each factor must be weighed and considered in relation to the others." *Id.* (citing *State v. Beauregard*, 32 S.W.3d 681 (Tenn. 2000)).

## 1. Blockburger "Same-Elements" Test

The first step in our analysis is examination of the two offenses under the "same-elements" test established in Blockburger. "In both the multiple punishment and multiple prosecution contexts, [the United States Supreme Court] has concluded that where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies." *Dixon*, 509 U.S. at 696 (citing *Brown v. Ohio*, 432 U.S. 161, 168-69 (1977); *Blockburger*, 284 U.S. at 304; *Gavieres v. United States*, 220 U.S. 338, 342 (1911)). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. Thus, "separate statutory crimes need not be identical—either in constituent elements or in actual proof—in order to be the same within the meaning of the constitutional prohibition [against double jeopardy]." *Brown*, 432 U.S. at 164 (citations omitted). Simply stated, unless each offense contains an element the other does not, "double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696.

"A person commits an offense who forges a writing with intent to defraud or harm another." T.C.A. § 39-14-114(a). "'Forge' means to . . . [a]lter, make, complete, execute or authenticate any writing so that it purports to . . . [b]e the act of another who did not authorize the act . . . ." T.C.A. § 39-14-114(b)(1)(A)(I).

In contrast, "[a] person commits the offense of identity theft who knowingly obtains, possesses, buys, or uses, the personal identifying information of another . . . [w]ithout the consent of such other person." T.C.A. § 39-14-150(b)(1)(B)(I).

As the trial court correctly noted at the motion for new trial hearing, "the key distinctions between the two statutes are the requirements of a writing for a Forgery conviction and the use of personal information of another for an Identity Theft conviction." By virtue of these differences, the two statutes pass *Blockburger* same-elements test, and, as a result, prosecution of the defendant for violation of forgery as well as identity theft did not violate the Double Jeopardy Clause of the United States Constitution. Our holding comports with the holdings of other states interpreting their state statutes. *See e.g., Addison v. State*, 791 N.W.2d 430, 2010 WL 4140439, at *4 (Iowa App. 2010) (holding the offense of forgery

is not a lesser-included offense of identity theft and the two convictions do not merge because the two crimes have separate and distinct elements); *Myers v. Commonwealth*, No. 2008-SC-000548-MR, 2009 WL 3165545, at *4 (KY Oct. 1, 2009) (holding second-degree forgery, theft of identity and false statement as to identity or financial condition are separate offenses for which a defendant may be punished for committing).

### 2. Duchac "Same-Evidence" Test

Next we must determine, using the principles of *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973), as a guide, whether the same evidence will be used to establish the offenses. For the forgery charge, the State offered proof that the Defendant unlawfully signed the victim's name to the duplicate certificate of title without her consent. For the identity theft charge, the State offered proof that the Defendant used the victim's signature on the duplicate certificate of title to transfer title to a third party without the victim's consent. We conclude that the proof submitted about the offenses was not the same.

### 3. Multiple Victims/Discrete Acts

Next, we must examine whether the Defendant's conduct involved multiple victims or discrete acts. The State contends that there were multiple victims in this case, the State, Ms. Holt, and Mr. Gourley. It concedes, however, that the indictment only listed Ms. Holt as the victim, making Mr. Gourley as a victim irrelevant to the double jeopardy inquiry. Although, "[i]n general terms, criminal conduct offends the State as the sovereign," *Winningham*, 958 S.W.2d at 746, categorization of the State as a "victim" as that term is used in *Denton* is somewhat specious. Clearly, this portion of the *Denton* analysis is designed to distinguish offenses. To rely on such a broad interpretation of the term "victim" would result in every criminal offense involving the same victim. We conclude that there is but one victim in this case for double jeopardy purposes, and this factor weighs in the Defendant's favor.

### 4. Same-Purposes Test

Our State Supreme Court has ruled that we must discern whether the purpose of the respective statutes at issue is the same or different to determine whether dual prosecutions will offend the double jeopardy clause of the state constitution. *Denton*, 938 S.W.2d at 378. The forgery statute criminalizes the falsification of writing. T.C.A. § 39-14-114(a). Whereas, the identity theft statute more broadly encompasses protection against the misuse of the personal identifying information of another person. T.C.A. § 39-14-150(b)(1)(B)(I). Thus, the purposes of the two statutes are different, and this factor weighs against the Defendant.

Because three of the four *Denton* factors weigh in favor of a finding that the Defendant's prosecution for the offense of forgery and identity theft did not violate double jeopardy principles, the judgment of the trial court allowing both convictions is affirmed.

### III. Conclusion

After a thorough review, we affirm the judgments of the trial court.


_____

ROBERT W. WEDEMEYER, JUDGE